UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIE VERLA ROLLAND,

Petitioner,

v.

Case No. 1:10-cv-741
Hon. Robert J. Jonker

CINDI CURTIN,

Respondent.
_________________________________/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

## I. Background

Petitioner was charged with kidnaping, felonious assault, and as a habitual offender. Motion to Withdraw Trans. at pp. 3-7 (docket no. 14). On March 5, 2009, petitioner pled guilty to knowingly restraining a person with the intent to hold that person for ransom or reward, commonly known as kidnaping, contrary to M.C.L. § 750.349. Plea Trans. (docket no. 13). Petitioner gave his plea pursuant to a plea agreement, which the prosecutor set forth as follows:

> There is a plea agreement . The Defendant would be pleading guilty to Count 1 [kidnaping]. The People would be dismissing Count II [felonious assault] and the Habitual Offender Notice, and the People would agree to the bottom of the guidelines. The Defendant will also agree to testify truthfully against any and all codefendants.

*Id.* at p. 4. Both petitioner and his counsel agreed that these were the terms of the agreement and that no other promises were made in exchange for petitioner's plea. *Id.* at pp. 4-8, 11.

Upon questioning by the trial judge, petitioner understood that he was pleading guilty to Count I, the felony of kidnaping, which had a maximum penalty of up to life or any term of years in prison. *Id.* at p. 5. The Judge further advised petitioner of his right to withdraw his guilty plea under certain circumstances:

> And do you understand that this Court has not entered into any agreements in relation to your plea of your sentence, and although there is a sentence agreement for you to be sentenced on the lower end of the guidelines, the sentencing guidelines, the Court is not bound by that agreement, but if I was going to sentence you to more time incarcerated, I would give you an opportunity to withdraw your guilty plea.

*Id.* at p. 8.

Petitioner then testified as to the basis of his guilty plea.

| | |
|---|---|
| THE COURT: | What happened that makes you think you're guilty of this offense? |
| [PETITIONER]: | Um, the – the guy had owed me some money, your Honor, and he was staying with me until – he was going to try to help me get the money back. And at that point I did get upset, and I pulled the knife out, so – but I didn't – I didn't hurt him. I didn't – I didn't try to hurt him, but I did pull a knife out because I was upset because I felt he had just got off on me on 200 bucks that I had gave him for a TV that didn't work, and I was wrong for that, your Honor. |
| THE COURT: | So did he – did he try to leave the apartment? |
| [PETITIONER]: | Um, yes, your Honor. |
| THE COURT: | And did you, in fact, let him leave? |
| [PETITIONER]: | No, your Honor. |

THE COURT: Okay. And what happened?

[PETITIONER]: Um, he stayed there, your Honor, and then he said he was going to help me, and then I had left for a minute, and I had come back, and he was tied up. I untied him. We called – he called his parents, and he said the money was being wired at the store right across the street. So then we walked to the store. And when we went in there, the money wasn't there yet, so we sat down in front of the store, your Honor. And the next thing I know, police started coming out of everywhere, and I got arrested, your Honor.

THE COURT: So you had him tied up?

[PETITIONER]: I didn't tie him up personally, but the codefendant tied him up, and I untied him because I didn't want him to be tied up because he said he was going to give me my money back, but I was upset that I felt I got beated out of 200 bucks.

Plea Trans. at pp. 9-10.

Petitioner also testified that a co-defendant, Mr. Bonner, tied up the victim. *Id.* at p. 10. In addition, although petitioner was not present, he understood that another co-defendant, Joel Farrow, "supposedly cut" the victim with a knife or razor. *Id.* Petitioner continued: "But when I got there, ma'am, I didn't see him bleeding from no cuts or nothing, but he said he was cut, but I didn't want him to get cut or hurt because he said he was going to get my money back. That's the only thing I wanted." *Id.* at pp. 10-11. Petitioner further testified that the victim was held, against his will, at petitioner's apartment, in order for petitioner to get his money back. *Id.* at p. 11. The

trial judge accepted petitioner's guilty plea, finding that petitioner's plea was understanding, voluntary, factually supported, and free from duress and coercion. *Id.*

On April 29, 2009, petitioner's counsel, Mr. Robinson, moved to withdraw as counsel due to a "complete breakdown in communication" and petitioner's desire that Robinson not represent him any more. Motion to Withdraw Counsel Trans. (Motion Trans.) at p. 3 (docket no. 14). Mr. Robinson advised the trial judge that petitioner had "sent the Court a couple of letters." *Id.* The substance of those letters do not appear in the motion transcript. However, the Rule 5 materials include a record sent by petitioner to the trial judge, which the judge received on April 6, 2009. *See* Petitioner's Letter (docket no. 1-1 at pp. 50-51 and docket no. 17). Petitioner refers to the correspondence as an "informal letter" with respect to petitioner's counsel, Mr. Robinson. In his letter, petitioner stated as follows (in his words)[1]:

> Dear Judge Manderfield:
>
> The informal letter is in regards and is in great concerns as to my lawyer Todd Robinson.
>
> 1) As I understood my plea agreement deal as to why I took a plea was to plea to a 0 - 4 with a Killebrew cap not to exceed more than (4) years. "On Record."
>
> 2) I asked for discovery request <—> police reports [Todd] has truly shown on going disputes and [ineffective] assistance of counsil.
>
> 3) There has been clearly a client attorney brake [down] and as of now I am so confused as to [what's] going on.
>
> 4) On April 2nd 2009 a Lansing Detective visited me at the Ingham County Jail without my attorney present. The Detective called Todd Robison by cell and infromed him as it is my right and Todd refused to help with this afromention matter.

[1] The Court notes that the record contains a poor copy of petitioner's letter. For purposes of this report, the Court has completed the obscured words and designated those words in brackets.

> 5) April 3rd 2009 Todd Robinson visited me at the Jail and infromed me about the alledge turn around in the case regarding my plea agreement so now I'm all confused and do not understand the case here in.
>
> 6) It is my request, based on on going esputes, ineffective assistance of counsil, that I am at the mercy of your Court to obtain better counsil. Based on Attorney Todd Robinson lazy and unprofessional and unreliable demeanor regarding my case.

*Id.*[2]

At the hearing, the following colloquy occurred between the trial judge and petitioner:

> THE COURT: . . . Is there anything that you want to say, Mr. Rolland?
>
> [PETITIONER]: Yes, ma'am. The reason why I want him to withdraw as my counsel is because, your Honor, I thought I took a plea agreement for zero to four year, and [Mr. Robinsin] said that wasn't it, and he said with the bottom --
>
> THE COURT: You pled to kidnapping.
>
> [PETITIONER]: See, I thought it was something different, your Honor.
>
> THE COURT: Well, we – I questioned you about it on the record, so [sic]. And I made notes, that's what it is, and the guidelines are 171 to 285 [months], and I believe that's what the recommendation is, 171 --
>
> [PETITIONER]: 171?

---

[2] Petitioner refers to a "Killebrew cap" in ¶ 1 of his letter. A "*Killebrew* Agreement" has been defined as follows: "When the prosecutor and a defendant enter into a binding agreement regarding the disposition of sentence, the trial court may not deviate from the agreement without first allowing the defendant to withdraw his guilty plea. *People v. Killebrew*, 416 Mich. 189, 207; 330 NW2d 834 (1982)." *People v. Sizer*, No. 219177, 2000 WL 33395249 at *1 (Mich. App. Dec. 12, 2000).

THE COURT: – on the minimum up to 360, the maximum. So the only thing – you have to testify against the codefendants, or the People, I believe, have a right to withdraw your plea.

Motion Trans. at pp. 3-4.

Petitioner further stated: that he did not know that he was taking that plea; that he "thought it was zero to four years;" that he did not know his guidelines; that he did not know that he was going to be getting 15 years; and that he did not "want to plead guilty to that." *Id.* at pp. 4-5, 7. The trial judge advised petitioner that kidnaping was a life offense, that she advised petitioner that it was a maximum life in prison, and that the other two counts had been dismissed. *Id.* at pp. 5, 7. The trial judge stated that petitioner had an "excellent defense attorney" but that she would grant the motion to withdraw if petitioner really thought that the relationship had deteriorated. *Id.* at p. 6. However, the judge cautioned petitioner:

THE COURT: You don't get to keep firing your lawyer, and this is set for trial on the other two codefendants on March 26th. So I can kind of see the handwriting on the wall. You're going to come in and want a motion to withdraw your plea. And if that's the case, you should be going to trial with the other two codefendants.

*Id.* at p. 6. At that time, the prosecutor stated that she would oppose a motion to withdraw the plea because petitioner pled guilty and laid a factual basis for his conviction and that a motion to withdraw the plea would be "clearly related to his sentence." *Id.* at pp. 6-7. Ultimately, the court granted Mr. Robinson's motion to withdraw as counsel and appointed petitioner new counsel for sentencing (Mr. Toman). *Id.* at p. 7.

At the sentencing held on June 3, 2009, the Court reduced the OV (offense variable) scoring as originally proposed, which resulted in a reduction in petitioner's sentencing guidelines. Sent. Trans. at pp. 7-10. After this adjustment, the Court sentenced petitioner to a prison term of 126 months (10 1/2 years) to 360 months (30 years). *Id.* at p. 10.

Petitioner, through different appellate counsel (Mr. Ferry), raised one issue in an application for leave to appeal his conviction to the Michigan Court of Appeals:

> I. Whether the trial court abused its discretion and committed clear error in denying defendant's motion to withdraw plea before sentencing?

Application (docket no. 16).[3] The Michigan Court of Appeals denied the application for lack of merit in the grounds presented and denied petitioner's motion for reconsideration. *People v. Rolland*, No. 295195 (Mich. App.) (Order, Jan. 5, 2010) (Order, Feb. 22, 2010) (docket no. 16).

Petitioner filed a *pro se* delayed application for leave to appeal to the Michigan Supreme Court raising two issues:

> I. Whether the trial court abused its discretion and committed clear error in denying defendant's motion to withdraw plea before sentencing.
>
> II. [Petitioner's] offense variable such as: OV 1 [?] was scored at 25, which should have been 5. OV 2 was scored 5 and should have been 0. OV 4 was scored 10 and should have been 0. OV 7 was scored 50 and should have been 0.

Application (docket no. 17). The Michigan Supreme Court denied petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Rolland*, No. 140649 (Mich. May 25, 2010) (docket no. 17).

[3] The court notes that contrary to the issue raised by petitioner's state appellate counsel, petitioner neither filed a motion to withdraw his guilty plea nor did the trial court deny such a motion. *See* discussion in § III, *infra*.

Rolland filed a petition seeking federal habeas relief in the Eastern District of Michigan, which raised one issue:

> I. Whether trial court abused its discretion and committed clear error in denying [petitioner's] motion to withdraw plea before sentencing?

Petition at ¶ 12 (docket no. 1). The petition was transferred to the Western District and is now before this Court. *See* Order Transferring Case (docket no. 3).

**II. Standard of review under 28 U.S.C. § 2254**

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable

facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

**III. Discussion**

Petitioner's habeas action is based upon his contention that the trial judge abused her discretion in denying petitioner's motion to withdraw his guilty plea. This habeas claim is frivolous because petitioner *never* filed a motion to withdraw his guilty plea. As discussed, after he pled guilty, petitioner sent an "informal letter" to the trial judge raising complaints about his counsel, Mr. Robinson. Petitioner has presented no evidence that he filed a motion to withdraw nor does the trial court's docket sheet reflect that any such motion was filed. *See People v. Rolland* (state court docket sheet) (docket no. 17). In short, there is no record of such a motion, there are no grounds raised to

support such a motion, and there is no state court ruling on such a motion which this court can address on a federal habeas corpus review.

In petitioner's application for leave to appeal, his state appellate counsel attempted to create both a non-existent motion to withdraw a guilty plea and a non-existent court ruling denying that motion:

> Where the defendant sent a letter to the trial judge prior to sentencing asserting that his trial counsel coerced him into accepting the plea, his appellate claim that the judge should have allowed him to withdraw the plea was preserved for review. *People v. Lewis*, 176 MA 690; 440 NW2d 12 (1989). A defendant is entitled to an evidentiary hearing when coercion is claimed.

Application for leave at p. 4 (docket no. 16). Assuming that *Lewis* sets forth the rule in Michigan, petitioner's actions did not constitute a motion to withdraw the plea. In *Lewis*, after his plea and prior to the imposition of his sentence, the defendant sent a "motion in the form of a letter to the trial court requesting that he be allowed to withdraw his guilty plea" and that he asserted his innocence to a probation investigator prior to his sentencing. *Lewis*, 176 Mich. App. at 692. Here, petitioner's "informal letter" to the trial judge complained about his attorney's performance and petitioner's alleged misunderstanding of the "plea agreement deal," which he claims involved a sentence of 0 to 4 years for kidnaping the victim. Unlike *Lewis*, nothing in the letter seeks to withdraw the plea and nothing in the letter or subsequent hearing transcripts indicates that petitioner is claiming actual innocence. In this regard, petitioner did not declare his innocence or disavow his testimony that he and the codefendants detained, threatened and apparently tortured the victim to obtain $200.00.

It is clear that the trial judge did not consider Mr. Robinson's motion to withdraw as counsel or petitioner's letter complaining about Mr. Robinson as a motion to withdraw his guilty plea. On the contrary, the trial judge observed that petitioner might want to file a motion to

withdraw his guilty plea after obtaining new counsel. In this regard, the prosecutor stated that she would oppose such a motion. Furthermore, neither petitioner nor his newly-appointed counsel moved to withdraw the plea at or before the sentencing. The factual predicate for petitioner's claim, i.e., a state court order which violated petitioner's federal constitutional rights by denying his motion to withdraw the guilty plea, simply does not exist. *See generally*, *McAleese v. Brennan*, 483 F.3d 206, 214 (3rd 2007) ("the 'factual predicate' of a petitioner's claims constitutes the 'vital facts' underlying those claims"). There being no basis for federal relief under 28 U.S.C. § 2254(d), the petition should be denied.

## IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: August 9, 2013

/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).